Donna Annette SLOAN–ROBERTS, Appellant,

v.

MORSE CHEVROLET, INC. d/b/a Morse Chevrolet–Geo, Inc., et al., Respondent.

No. WD 58452.

Missouri Court of Appeals, Western District.

April 10, 2001.

As Modified on Denial of Rehearing May 29, 2001.

Bernard E. Brown, Kansas City, for Appellant.

James C. Morrow, Kansas City, for Respondent.

Before ELLIS, P.J., LOWENSTEIN and BRECKENRIDGE, JJ.

LOWENSTEIN, Judge.

This is a suit brought in Jackson County by a Kansas car buyer against the seller, a Kansas car dealership. The seller, a Kansas corporation, obtained a dismissal based on lack of personal jurisdiction because all dealings between the buyer and seller occurred in Kansas.

### Factual and Procedural History

Respondent, Morse Chevrolet, has its principal place of business in Kansas; it is

not registered to conduct business in Missouri. Morse's showroom is on Metcalf Avenue, Overland Park, Kansas, about four miles from the Missouri border. Appellant Donna Sloan Roberts is a Kansas resident. In 1995, at its Kansas sales lot, Respondent sold Appellant a 1993 minivan without disclosing that the minivan was composed of two vehicles that had been welded together.

The back half of the minivan came from a minivan that was in a head-on collision in 1993 and was sold as salvage to Busy Bee Auto Salvage and Sales in Harrisonville, Missouri. Busy Bee resold it in wrecked condition to a car dealer in Kansas City, Missouri, called Offshore Marine, Inc. Offshore Marine reconstructed the minivan using the front half of another minivan that had its VIN numbers removed. The newly formed minivan was sold by Offshore Marine on the title of the back half of the minivan (but with an odometer certification for the entire car) through the Kansas City Auto Auction in Kansas City, Missouri, to Dealers Leasing, Inc. and Dealers Leasing Used Vehicles, Inc., which is a wholly owned subsidiary of Dealers Leasing, Inc. (Dealers). Dealers, which are Kansas corporations that are registered to do business in Missouri, resold the automobile to Morse at the Metro Auto Auction in Lee's Summit, Missouri. Morse then sold it to Appellant. Neither Busy Bee nor Offshore Marine nor either auction is a part of this suit.

The petition alleged numerous, continuing defects and problems with the vehicle. Specifically, Appellant asserted: violations of the Missouri Merchandising Practices Act, § 407.020, et seq. RSMo 1994,[1] violation of the Kansas Consumer Protection Act, § 50–626 et seq. K.S.A.1994, fraud, breaches of express and implied warranties, negligence, negligent misrepresenta-tion, and violation of the Kansas Title History Search Disclosure Statute. The petition also alleged that Morse regularly advertises in the Kansas City Star, which is circulated through Kansas City, Missouri; that Morse regularly sells to Missouri residents; that Morse has substantial contractual relations with the General Motors Acceptance Corporation in Missouri (including financing of its car sales); and specifically that Appellant's purchase involved financing through GMAC. Moreover, Appellant learned of the minivan through the Kansas City Star, and alleged that some of her damages (including finance charges and warranty premiums) related to the GMAC financing and warranty agreements.

The trial court dismissed the case against Morse for lack of personal jurisdiction. In its order of dismissal, the trial court noted that Appellant had attempted to obtain personal jurisdiction over Morse under Missouri's long-arm statute, § 506.500, based on allegations in the petition that Morse transacted business and committed tortious acts in Missouri. Appellant so alleged because Morse went to the Missouri auction and purchased an obviously defective vehicle, which even lacked a paper trail, because Morse had purchased many vehicles in Missouri, because Morse advertised extensively and sold regularly to Missouri customers, and because it had an ongoing arrangement to finance loans through a Missouri entity. The trial court said that the purchase at the Metro Auction was a unilateral activity by Morse well before the negotiation and purchase of the car by Appellant in Kansas, and that any damages she incurred were the result of misrepresentations which occurred at the time of sale in Kansas.

---

1. All further statutory references are to RSMo 1994, unless indicated otherwise.

Appellant filed a motion to reconsider, asserting that Morse had purchased this particular vehicle in Missouri with the idea that it would be difficult for a buyer to trace the genesis of the vehicle. The court noted that the Appellant had not presented any new evidence establishing personal jurisdiction and denied the motion. Appellant filed another motion to reconsider the question of jurisdiction, pointing to § 407.820, which subjects persons to jurisdiction by Missouri courts who engage in "purposeful contacts within the state ... in connection with ... advertising ... to ... sell new motor vehicles...." She attached as exhibits Morse's ads in the *Kansas City Star*, which is located in and has a substantial readership on the Missouri side of the state line, and portions of Appellant's deposition where she testified that she had seen the ad for this particular vehicle while reading the *Star* in her home. This motion was also denied, and this appeal followed.

## Standard of Review

■■■ The plaintiff has the burden of proving the existence of personal jurisdiction over the defendant. *Schilling v. Human Support Services*, 978 S.W.2d 368, 370 (Mo.App.1998). The trial court may hear the defendant's motion for lack of personal jurisdiction on affidavits, on oral testimony or on depositions. *Id.*, citing *Chromalloy Am. Corp. v. Elyria Foundry Co.*, 955 S.W.2d 1, 4 (Mo. banc 1997). Although the trial court may disbelieve any factual statements, its inquiry is limited to an examination of the petition on its face and the supporting affidavits and depositions; it may not consider the merits of the underlying action. *Schilling*, 978 S.W.2d at 370. "The determination of the

jurisdiction issue is for the trial court 'in the first instance.'" *Stavrides v. Zerjav*, 848 S.W.2d 523, 527 (Mo.App.1993). "But the sufficiency of the evidence to make a *prima facie* showing that the trial court may exercise personal jurisdiction is a question of law ... which we review independently on appeal." *Id.* (citations omitted).

■■■ Because the trial court did not notify the parties that it would treat the motion to dismiss as one for summary judgment so as to provide the parties a reasonable opportunity to present all materials pertinent to a motion for summary judgment, this court shall treat the trial court's judgment as one of dismissal on the pleadings. *Shouse v. RFB Const. Co., Inc.*, 10 S.W.3d 189, 192 (Mo.App.1999). "When reviewing the grant of a motion to dismiss a petition, all facts alleged in the petition are deemed true and the plaintiff is given the benefit of every reasonable intendment." *Id.* "A plaintiff need not prove all of the elements that form the basis of the defendant's liability, but must show that acts contemplated by the [long-arm] statute took place." *Conway v. Royalite Plastics, Ltd.*, 12 S.W.3d 314, 318 (Mo. banc 2000).

## Analysis

Appellant first argues that the trial court erred in dismissing its petition for lack of personal jurisdiction because Respondent Morse was subject to both general and specific jurisdiction in Missouri.

### A. Specific Jurisdiction

■■■ Where general jurisdiction, *infra*, is absent, Missouri's long-arm statute, codified in § 506.500,[2] exists to expand jur-

---

**2.** The relevant part of Missouri's long-arm statute, § 506.500.1, reads as follows:

Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does

isdiction over non-resident defendants to the extent possible under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889, 892 (Mo. banc 1970). Specific jurisdiction, like general jurisdiction, is subject to the requirement that the defendant have "minimum contacts" with Missouri. *Capitol Indem. Corp. v. Citizens Nat'l Bank*, 8 S.W.3d 893, 899 (Mo.App.2000).

In the case at bar, Appellant argues Missouri has jurisdiction under the long-arm statute because this case involves a defendant transacting business in Missouri, forming a contract involving a Missouri entity, and committing a tortious act in Missouri. Because this court finds that this suit arose from Morse transacting business in Missouri (thus triggering § 506.500.1)[3] and because Morse has minimum contacts with Missouri sufficient to satisfy due process, this case is reversed.

■ "To subject a non-resident defendant to the long-arm jurisdiction of this state, the plaintiff must plead and prove two elements: first, that the suit arose from any of the activities enumerated in the long arm statute, and second, that defendant has sufficient minimum contacts with Missouri to satisfy due process requirements." *Capitol*, 8 S.W.3d at 899. In reversing, this court finds *Schilling* compelling in applying the two-pronged inquiry for specific jurisdiction. 978 S.W.2d 368.

In *Schilling*, although the parties were from Illinois and the injury occurred in Illinois, the court found that the cause of action arose from an act enumerated in the long-arm statute. The defendant, Human Support Services, an Illinois entity, provided transportation to plaintiff, a disabled Illinois resident, by way of a bus with a defective chair lift. *Id.* at 369. The plaintiff fell to the ground and was injured in Illinois as a result of the defective chair lift. *Id.* at 370. Prior to this accident, HSS had had the bus repaired several times by a co-defendant in St. Louis, Missouri. The court found that these repairs were sufficient to constitute transaction of business under the long-arm statute, even though it was unclear whether the Missouri repairs were connected to the injury. *Id.* at 371. *See also Chromalloy*, 955 S.W.2d 1 (Mo. banc 1997)(two trips to Missouri to negotiate and later review contract—although contract was formed in Ohio—constituted transaction of business and triggered Missouri's long-arm statute).

■ Similarly, in the case at bar, though both the Appellant and Respondent are Kansas residents and the parties' business relationship arose in Kansas, Respondent's purchase of the defective automobile in Missouri triggered the long-arm statute because this cause of action arose from that purchase. In so finding, this court notes that "[t]he 'transaction of business' provision of the long-arm statute is to be construed broadly so that even a single transaction may confer jurisdiction, if that

any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts: (1) The transaction of business within this state; (2) The making of any contract within this state;

(3) The commission of a tortious act within this state....

3. Because this case is reversed under the transaction of business prong, it is unnecessary to determine whether specific jurisdiction arises under either the tort or breach of contract prong.

is the transaction that gives rise to the suit." *Schilling,* 978 S.W.2d at 371 (quoting *Chromalloy,* 955 S.W.2d at 4). Just as the defendant in *Schilling* allegedly failed to inspect and/or maintain the wheelchair lift, in the case at bar, it is alleged that Morse was negligent in not inspecting the defective car prior to purchasing and reselling it in Kansas. And, as noted in the standard of review, in determining whether a plaintiff has made appropriate allegations concerning jurisdiction so as to survive a motion to dismiss, all facts are deemed true and the plaintiff is given the benefit of every reasonable intendment. *Shouse,* 10 S.W.3d at 192.

After determining that the long-arm clause has been triggered, the next inquiry is whether minimum contacts exist such that the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The minimum contacts test is not applied mechanically; rather, "the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Chromalloy,* 955 S.W.2d at 5 (quoting *Dillaplain v. Lite Ind., Inc.,* 788 S.W.2d 530, 534 (Mo.App.1990)). "Random, fortuitous or attenuated contacts with the forum state cannot create jurisdiction." *Beckers v. Seck,* 14 S.W.3d 139, 143 (Mo.App.2000) (citation omitted).

The factors to be considered in determining whether the defendant has sufficient minimum contacts with the forum state include: 1) the nature and the quality of the contact; 2) the quantity of those contacts; 3) the relationship of the cause of action to those contacts; 4) Missouri's interest in providing a forum for its residents; 5) the convenience or inconvenience to the parties. *Schilling,* 978 S.W.2d at 371 (citation omitted). "The primary factors are the first three, while the last two deserve only secondary importance." *Id.*

Morse's purchase of a defective vehicle from a Missouri auto auction, which it subsequently resold to Appellant without inspection, is the heart of the case; thus, the nature and quality of that transaction of business is highly related to the suit. *Cf. Mead v. Conn,* 845 S.W.2d 109 (Mo. App.1993) (non-resident physician transacted business in Missouri, but exercising personal jurisdiction over him violated due process where nature and quality of contacts were minimal because his contact with Missouri arose from sending EKG results to Missouri; the physician neither came to Missouri nor caused another party to come to Missouri); *State of Missouri, ex rel. Auburn Ford. v. Westbrooke,* 18 S.W.3d 143 (Mo.App.2000) (non-resident car dealership not subject to personal jurisdiction in Missouri under long-arm statute where car was manufactured in Missouri but non-resident defendant did not have minimum contacts with Missouri because advertising in Missouri/purchases at Missouri auto auction were unrelated to underlying cause of action).

In addition, Appellant's petition alleged that Morse regularly purchases used vehicles in Missouri and regularly advertises in a newspaper targeted primarily at Missouri residents. *See Pohlmann v. Bil Jax,* 954 S.W.2d 371, 373 (Mo.App.1997) (advertising in the forum state is an example of conduct evincing an intent to serve the forum state's market). Further, Appellant alleged that Morse has numerous contractual arrangements with a Missouri entity. Finally, as in *Schilling,* there is no showing that either party in the underlying action would be inconvenienced if the action were tried in Missouri.

After determining whether sufficient minimum contacts exist, a court must consider additional (though related) factors before exercising jurisdiction over a non-resident defendant. *Schilling*, 978 S.W.2d at 371. These factors include: 1) the burden on the defendant; 2) the interest of the forum state; 3) the plaintiff's interest in obtaining relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversies; 5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

"Defendant's initiation of a contact with a Missouri business is an important factor in weighing the various due process factors." *Id.* In this case, this court finds noteworthy that Morse initiated contact in Missouri to purchase the defective car. Morse's trip to Missouri was a purposeful visit, made with the intention of returning to Kansas to resell it and profit. *See Chromalloy*, 955 S.W.2d at 4. And again, there is no indication that a trial in Missouri would create a burden on Morse because it is located in the Kansas City metropolitan area, mere miles from the Missouri border.

## B. General Jurisdiction

Since the enactment of the long-arm statute, most jurisdictional analysis in Missouri has concerned specific jurisdiction. Although unnecessary to the resolution of the case at hand, this court nonetheless briefly reviews general jurisdiction.

General jurisdiction can arise where a foreign corporation is present and conducts substantial business in Missouri. *State ex rel. K–Mart Corp. v. Holliger*, 986 S.W.2d 165 (Mo. banc 1999) (corporation adjudged to be conducting substantial and continuous business in Missouri was allowed to be sued here for a slip-and-fall case that arose in Colorado). "Since a corporation is a fictional entity, ascertaining its 'presence' is sometimes conceptually difficult." *Id.* at 167. Extraterritorial exercises of jurisdiction are permissible where a defendant has certain minimum contacts with the forum state. *Id.*

General jurisdiction requires that a non-resident defendant's contacts with Missouri be "substantial" and "continuous." *International Shoe*, 326 U.S. at 318, 66 S.Ct. 154. Exercising general jurisdiction over a non-resident defendant must comply with notions of "fair play and substantial justice" and is subject to limitation by the Due Process clause of the Fourteenth Amendment. *Id.* at 316, 66 S.Ct. 154. As the Supreme Court of Missouri commented, "*International Shoe* ... shifted the focus of jurisdictional inquiry from 'Is the defendant there?' to 'Is it fair?'" *Holliger*, 986 S.W.2d at 167.

Even though a non-resident defendant may neither be registered in the forum state nor have its principal place of business there, general jurisdiction still may exist where the non-resident defendant purposefully avails itself so as to reasonably expect being haled into the forum state's courts. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (neither plaintiff nor defendant was a resident of New Hampshire, but because magazine was widely distributed there, New Hampshire had interest in adjudicating libel claim, and no due process violation existed where regular monthly sales could not be characterized as "random, isolated or fortuitous" and where defendant's activities gave New Hampshire a legitimate interest in holding defendant answerable); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 289, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (Oklahoma had no jurisdiction over New York car dealer where the only connection between defendant and forum state was that an automobile defendant

sold crashed in Oklahoma; Court noted "no evidence that [defendant] does any business in Oklahoma, ships or sells any products to or in that State, has an agent to receive process there, or purchases advertisements in any media reasonably calculated to reach Oklahoma. In fact ... there was no showing that any automobile sold by [defendant] has ever entered Oklahoma with the single exception of the ... present case.").

Ascertaining whether Missouri has general jurisdiction over Respondent would require more facts because the record does not show whether Respondent's activities in Missouri are substantial and continuous. Such a determination would necessitate further discovery, though this court is mindful that forum states rarely exercise general jurisdiction over non-resident defendants. *Davis v. Baylor Univ.*, 976 S.W.2d 5, 7–8 (Mo.App.1998). However, this case need not be remanded to determine whether general jurisdiction exists because as noted *supra*, this court finds that the pleadings alleged specific jurisdiction sufficient to survive a motion to dismiss. (See *Shouse* where plaintiff's pleadings were sufficient to withstand a motion to dismiss but discovery was necessary to determine whether personal jurisdiction existed. 10 S.W.3d 189.)

In sum, this court finds that Appellant has made a *prima facie* showing under the standard of review of personal jurisdiction under Missouri's long-arm statute. Appellant's remaining points (first that Missouri has jurisdiction under § 407.820, and second that Appellant has the right to discovery under *Shouse*) are rendered moot.

The case is reversed and remanded.

All concur.