244 F.Supp.2d 1015 (2002)
ANHEUSER-BUSCH, INC., Plaintiff,
v.
ALL SPORTS ARENA AMUSEMENT, INC., Defendant.
No. 4:02CV949 FRB.
United States District Court, E.D. Missouri, Eastern Division.
October 25, 2002.
Edward G. Wierzbicki, Douglas N. Masters, Mary E. Innis, Nerissa Coyle McGinn, Thad Chaloemtiarana, Pattischall and McAuliffe, Chicago, IL, Steven P. Sanders, Sr., Lisa A. Larkin, Williams and Venker, St. Louis, MO, for plaintiff.
Gavin P. Lentz, Bochetto and Lentz, Philadelphia, PA, Thomas E. Kopil, Timby and Haft, Newtown, PA, for defendant.

*1016 MEMORANDUM AND ORDER

BUCKLES, United States Magistrate Judge.
Presently pending before the Court is defendant, All Sports Arena Amusement, Inc.'s Motion to Dismiss this action or in the alternative to Transfer the action (filed July 30, 2002/Docket No. 25). All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).
Plaintiff Anheuser-Busch brings this action seeking damages for breach of contract and breach of the implied warranty of merchantability by the defendant. Anheuser-Busch further seeks declaratory judgment, pursuant to 28 U.S.C. § 2201, for non-infringement of copyright, non-infringement of trade dress, a declaration of no tortious interference with contract, a declaration of non-misappropriation of trade secrets or ideas, a declaration of fraud by the defendant on the United States Patent and Trademark Office, a declaration of genericness, a declaration of non-infringement of trademark, and for a declaration as to the amount owed plaintiff for repairs. Anheuser-Busch contends that this Court may properly exercise jurisdiction over the matter, pursuant to 28 U.S.C. § 1338, because it arises under the copyright and trademark laws of the United States and pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds the $75,000 statutory minimum.

STATEMENT OF THE CASE
This litigation arises out of a business relationship between plaintiff, Anheuser-Busch,[1] and defendant, All Sports Arena Amusement, Inc. ("All Sports").[2] In 1998, Anheuser-Busch entered into an agreement with Innovative Concepts and Entertainment, Inc. ("ICE") to use its bubble hockey games in television commercials for plaintiffs Bud Light beer. (Compl.śś6-9) In conjunction with the "Bubble Boys" commercials, Anheuser-Busch began developing a plan to sponsor bubble hockey game tournaments during the 1998-1999 National Hockey League season. (Compl.ś10) In December 1998, Anheuser-Busch purchased bubble hockey games manufactured by ICE from All Sports, with the understanding that ICE manufactured the games. (Compl.ś 12) In February 1999, Anheuser-Busch sent All Sports a license agreement to document the relationship between the parties thus far and to address the use of Anheuser-Busch trade names and logos in All Sports' games. (Compl.Ex. A) In May 2000, Anheuser-Busch and All Sports entered into the licensing agreement which governed All Sports' use of Anheuser-Busch trademarks and copyrights in bubble hockey games that All Sports had provided and would provide to Anheuser-Busch, its wholesalers, and retailers. (Compl.ś 14, Compl.Ex. A) The licensing agreement contained a Quality and Approval section which required approval of pre-production samples to ensure the quality of the items bearing an Anheuser-Busch logo. The agreement required All Sports to maintain the same high quality of the pre-production samples in the items they sold. The agreement also required that Anheuser-Busch approve any changes to the games. (Compl.Ex. A) The licensing agreement also contained the following forum selection clause:
This agreement will be deemed to have been executed in the State of Missouri, *1017 U.S. and will be construed and interpreted according to the laws of that State without regard to its conflict of law principles or rules. Licensee agrees that it shall bring any legal action or proceeding with respect to this Agreement in the United States District Court for the Eastern District of Missouri or, if such court does not have jurisdiction, in any court of general jurisdiction in the City or County of St. Louis, Missouri, U.S. If Licensor brings a legal action or proceeding with respect to this Agreement in such courts, Licensee consents to the personal jurisdiction of such courts, agrees to accept service of process by mail and hereby waives any jurisdictional or venue defenses otherwise available to it.
(Compl.Ex. A) During the course of their relationship, the parties communicated regularly via mail, telephone, e-mail and facsimile. (Plaintiffs Response "PI. Resp." 7) All Sports shipped at least fortynine (49) bubble hockey and bubble soccer games into Missouri. (Pl.Resp.7) In addition, representatives and employees of All Sports made four trips to Anheuser-Busch headquarters in St. Louis to discuss the development of a business relationship involving bubble hockey and bubble soccer games. (Pl.Resp.7) In 2001, Anheuser-Busch and All Sports agreed that All Sports would repair and refurbish games already owned by Anheuser-Busch, its wholesalers and retailers. (Compl. ś 18) Anheuser-Busch alleges that in December 2001, All Sports began shipping "materially changed" games without Anheuser-Busch's prior approval, in violation of the licensing agreement between the parties. (Compl.1119) After learning of a breakdown in the relationship between ICE and All Sports' it became evident to Anheuser-Busch that All Sports could no longer supply the high quality ICE games contemplated under the licensing agreement. (Compl. ś 20) As a result, Anheuser-Busch purchased games for its upcoming 2002 tournament directly from ICE. (Compl.Âś 21) On May 16, 2002, All Sports, through an attorney, sent a letter accusing Anheuser-Busch of copyright, trademark, and trade dress infringement, tortious interference, trade secret misappropriation and fraudulent misrepresentation. The letter asked Anheuser-Busch to begin negotiations with All Sports to settle the dispute or legal action would be taken. (Compl. Ex C) After negotiations between the parties failed, Anheuser-Busch filed this action on June 24, 2002.
The declaratory judgments sought by the plaintiff as to non-infringement of copyrights, trademarks, and trade dress, declarations of no tortious interference with contract, and non-misappropriation of trade secrets all arise out of the business relationship between the parties. Anheuser-Busch is the owner of the mark "Bubble Boys," which is registered with the United States Patent and Trademark Office. (Compl.H 69) All Sports has attempted to register the marks "Bubble Hockey" and "Bubble Soccer" with the United States Patent and Trademark Office. Registration of these marks has thus far been denied.
Defendant, All Sports, now moves to Dismiss plaintiffs complaint pursuant to Fed.R.Civ.P. 12(b)(2) for lack of jurisdiction over the person and pursuant to Fed. R.Civ.P. 12(b)(3) for improper venue or in the alternative to transfer the action pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses. Defendant argues that this Court lacks personal jurisdiction over the defendant under the "minimum contacts" analysis required by constitutional due process. The defendant further argues that the case should be dismissed or transferred because venue is improper under 28 U.S.C. § 1391 or inconvenient pursuant to 28 *1018 U.S.C. § 1404(a). Finally, Defendant argues that this Court should decline to hear this declaratory judgment action because it was brought by the plaintiff in an improper effort to choose a forum.
Plaintiff responds that because of a forum selection clause in the licensing agreement between the parties, and pursuant to the Missouri long-arm statute and the dictates of constitutional due process this court may assert personal jurisdiction over the defendant. The plaintiff further asserts that venue is proper in Missouri pursuant to 28 U.S.C. § 1391(c) and convenient to the parties and witnesses pursuant to 28 U.S.C. § 1404(a). The plaintiff further argues that declaratory judgment relief is proper under the Declaratory Judgment Act (28 U.S.C. § 2201) and under Eighth Circuit precedent.
Defendant argues in reply that the licensing agreement between the parties, which contains a forum selection clause, does not govern the complaints upon which this litigation is based and is therefore not a proper basis upon which to find jurisdiction. Defendant further argues that its other contacts with the plaintiff are not sufficient to establish jurisdiction. Defendant also contends that Pennsylvania is a more convenient forum for the parties and witnesses than Missouri.

DISCUSSION

I. Personal Jurisdiction

Plaintiff and defendant contest whether this Court may properly exercise personal jurisdiction over the defendant. The Court employs a two-part test in determining whether it may assert jurisdiction over a non-resident. First, the Court will determine whether the defendant's conduct falls under one of the categories of the state long arm statute. Second, the Court must determine whether the defendant has established "minimum contacts" with the forum state so that the Court's exercise of jurisdiction comports with the dictates of constitutional due process. Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc., 950 F.2d 526, 528 (8th Cir.1991).
The Missouri long arm statute, Mo.Rev. Stat. § 506.500, confers jurisdiction upon any person, firm or corporation "as to any cause of action arising from the doing of any such acts: 1) the transaction of any business within this state; 2) the making of any contract within this state [or] 3) the commission of a tortious act within this state ...." The burden is on the plaintiff to make a prima facie showing that personal jurisdiction exists to survive a motion to dismiss. Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir.1998).
Anheuser-Busch argues that the defendant's conduct falls under the three categories of the Missouri long-arm statute and that therefore the first prong of the personal jurisdiction analysis has been met. The undersigned finds that the defendant transacted business within the state of Missouri, meeting the requirements for jurisdiction under the long-arm statute. Missouri courts broadly construe the "transaction of any business" clause of the statute to the extent that the business "may consist of a single transaction, if that is the transaction sued upon." State ex rel. Metal Service Center of Georgia, Inc. v. Gaertner, 677 S.W.2d 325, 327 (Mo. banc 1984); Sloan Roberts v. Morse Chevrolet, Inc., 44 S.W.3d 402, 407 (Mo.Ct.App.2001). Missouri courts have held that telephone and mail contacts alone are not sufficient to confer a Missouri court's jurisdiction over a non-resident defendant. Capitol Indemnity Corp. v. Citizens Nat'l Bank of Fort Scott, 8 S.W.3d 893, 904 (Mo.Ct.App. 2000); Farris v. Boyke, 936 S.W.2d 197, 201 (Mo.Ct.App.1996); TSE Supply Co. v. Cumberland Natural Gas Co., 648 S.W.2d 169, 170 (Mo.Ct.App.1983). However, Missouri courts have held the following to *1019 consist of the "transaction of business" within the state of Missouri: the purchase of a car in Missouri by a Kansas resident, Sloan-Roberts, 44 S.W.3d 402; the repair, in Missouri, of a vehicle owned by an Illinois resident, Schilling v. Human Support Services, 978 S.W.2d 368 (Mo.App. 1998); two trips to Missouri to conduct business, Chromalloy Am. Corp. v. Elyria Foundry Co., 955 S.W.2d 1 (Mo. banc 1997); and telephone and mail contacts and one visit to Missouri, Wallow Elec. Mfg. Co. v. Sam Dick Indus., 734 S.W.2d 295 (Mo.App.1987).
The plaintiff alleges, and the defendant does not contest that representatives and employees of All Sports made as many as four trips to the state of Missouri to discuss sales and marketing of bubble sports games with Anheuser-Busch. In addition, over the course of their relationship, the parties communicated through mail, telephone and facsimile, and All Sports shipped forty-nine (49) bubble sports games into Missouri. Based on the case law discussed above, the undersigned finds that these contacts with the state constitute the transaction of business within the state of Missouri for purposes of the longarm statute.[3]
Having met the requirements of the long-arm statute, the discussion now turns to whether defendants contacts with the forum comport with the dictates of constitutional due process. The Supreme Court has held that to subject a defendant to personal jurisdiction, due process requires that "he have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Contacts are sufficient when "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Furthermore, it is essential in each case that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).
Much ado is made by both parties regarding the forum selection clause in the licensing agreement. The plaintiff bases its breach of contract claim upon this licensing agreement and argues that the forum selection clause indicates the defendant's consent to suit in Missouri. The defendant argues that this clause is of no significance because the licensing agreement applies only to the coin-operated games sold by the defendant to the plaintiff, its wholesalers, and retailers, and does not apply to the non-coin operated tournament games of which the plaintiff complains about the quality. The parties have not presented sufficient evidence for the Court to determine at this time to which transactions the licensing agreement applies, and at this early stage of the litigation, the Court must not consider the merits of a particular claim. However, this does not render the existence of the forum selection clause unimportant. Regardless of whether the licensing agreement applies here, the forum selection clause is prima *1020 facie evidence that the defendant was aware of the plaintiffs desire to have all litigation arising out of the relationship between the parties heard in Missouri courts. The clause should have put the defendant on notice that if the plaintiff brought suit against the defendant it would do so in Missouri and that the plaintiff intended that the defendant agree to such jurisdiction as part of the business arrangement between them. See In re Texas Prisoner Litigation, 41 F.Supp.2d 960, 964 (W.D.Mo.1999)(holding that in a case involving non-contractual claims, a forum selection clause in a contract served as evidence that defendant availed itself "of the privileges of conducting activities within the forum state, thus invoking the benefits and protection of its laws.")
If it is found that the licensing agreement governs the conduct of the parties in every part of their relationship, then the forum selection clause indicates the defendant's consent to suit in Missouri. However, if the licensing agreement is found not to govern the relationship in issue, the forum selection clause still serves as evidence of intent on the part of the plaintiff to select Missouri as a forum. This Court will not definitively rule that the forum selection clause covers the contractual dispute between the parties, but finds that the existence of the clause is at least a factor to be considered in weighing the extent of the defendant's contacts with the forum for purposes of determining jurisdiction. The existence of the forum selection clause lends support for the finding that the defendant should have reasonably anticipated being haled into court in Missouri.
The Eighth Circuit has established a five factor test to determine whether a defendant's contacts with a state give rise to jurisdiction within the dictates of due process. The Court must determine, 1) the nature and quality of contacts with the forum state, 2) the quantity of such contacts, 3) the relation of the cause of action to the contacts, 4) the interest of the forum state in providing a forum for its residents, and 5) the convenience of the parties. Burlington Industries, Inc. v. Maples Industries, Inc., 97 F.3d 1100, 1102 (8th Cir. 1996). The Court is to give greater weight to the first three factors than to the last two. Id. The Court is instructed to look at the facts in the light most favorable to the nonmoving party, here the plaintiff, and resolve all factual conflicts in favor of that party. Dakota Indus. Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384 (8th Cir. 1991). Thus, the undersigned will rely on the factual assertions made in the plaintiffs complaint and the plaintiffs response to the defendant's motion to dismiss.
In considering the first two factors, regarding nature, quality and quantity of contacts, the undersigned finds that All Sports' contacts with the forum are significant. All Sports and Anheuser-Busch began working together on creating Bud Light bubble hockey games and tournaments in 1998. At minimum, the parties have worked together in developing bubble hockey games with Anheuser-Busch logos, in selling and distributing games to Anheuser-Busch wholesalers, retailers, and to Anheuser-Busch directly, and in developing, fabricating, and transporting games and trailers for use by both parties. These activities necessarily involved ongoing purposeful communications directed into Missouri by the defendant via mail, electronic mail, facsimile, and telephone, and including shipments of at least fortynine (49) bubble games to Missouri. In addition, these contacts included four trips to Anheuser-Busch headquarters in St. Louis, Missouri, by All Sports' representatives and employees. The contacts by All Sports were made with the intention of either creating or maintaining a business relationship with Anheuser-Busch. The *1021 extent of the defendant's contacts with the forum under these two factors overwhelmingly favors the plaintiffs position.
The third factor requires the Court to look at the relationship between the cause of action and the defendant's contacts with the forum. Anheuser-Busch's two contract claims relate to the quality of games sold by All Sports and repairs made by All Sports to previously purchased games. The forum selection clause instructs that "the agreement will be deemed to have been executed in the State of Missouri." (Compl.Ex. A) If the forum-selection clause applies to the dispute between the parties, this factor favors the plaintiff. Even if the forum-selection clause does not apply to the dispute, its existence serves as evidence that the defendant was on notice that the plaintiff believed the contract to have been executed in Missouri. In the various counts of the complaint requesting declarations of non-infringement of copyrights, trade dress, and trademarks of All Sports, Anheuser-Busch argues that none of these are subject to protection under the copyright and trademark laws of the United States and to the extent that they are protectable, they are protectable by Anheuser-Busch. Which party holds the rights to use the ideas and marks for bubble hockey tournaments and equipment used in those tournaments is clearly the basis of the dispute. The "Bubble Boys" mark has been approved by the Patent and Trademark Office of the United States as a mark registered by Anheuser-Busch. Although All Sports has attempted to register its "Bubble Hockey" and "Bubble Soccer" marks with the Patent and Trademark Office, their application has thus far been denied. Thus, All Sports does not definitively hold copyrights and trademarks in Pennsylvania; Anheuser-Busch does not definitively hold them in Missouri. Under the third factor, the relationship of the cause of action to the nonresident party's contacts with the forum, the undersigned finds that because of the forum selection clause, the relationship between the breach of contract claims and the defendant's contacts with the forum favors plaintiff. The undersigned finds that it is not clear whether the copyrights, trade dress, and trademarks in the Bubble Hockey tournament and games lie in Pennsylvania with the defendants or in Missouri with the plaintiff. Thus, on these causes of action neither party is overwhelmingly favored.
Under the fourth factor, Missouri clearly has an interest in providing a forum to its resident Anheuser-Busch to resolve its grievances. This factor favors the plaintiffs position. Finally, under the fifth factor, convenience of the parties, neither party is overwhelmingly favored. Clearly, it would be more convenient for Anheuser-Busch and its witnesses to litigate this matter in Missouri where its headquarters are located, and it would be more convenient for the defendant if the dispute were litigated in Pennsylvania.
The Eighth Circuit instructs that in weighing these five factors, the court "must not lose sight of the `central concern of the inquiry' which is the `relationship among the defendant, the forum, and the litigation.'" Land-O-Nod Co. v. Bassett Furniture Indus. Inc., 708 F.2d 1338, 1340 (8th Cir.1983) (quoting Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)). Following this admonishment, the undersigned finds that the defendant's contacts with the forum are sufficient to confer this Court's jurisdiction over the defendant, in that defendant, by visiting the forum on four occasions and by directing numerous contacts into the forum in an effort to maintain an ongoing business relationship with the plaintiff, "purposely availed itself of the privilege of conducting activities within the forum State." Burger King, 471 U.S. at *1022 475, 105 S.Ct. 2174. Because of these contacts and the purposeful availment to the forum, the defendant should have anticipated being haled into court in Missouri.

IB. Venue

Defendant next argues that even if personal jurisdiction exists over the defendant, the case should still be dismissed or transferred for improper venue. Under 28 U.S.C. § 1391(c), a defendant that is a corporation is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Under 28 U.S.C. § 1391(b)(1), an action may be brought in "a judicial district where any defendant resides." Having already determined that this Court may exercise personal jurisdiction over the defendant, under 28 U.S.C. § 1391(c), the defendant is deemed to reside in any judicial district in Missouri. As such, venue is proper in the Eastern District of Missouri under 28 U.S.C. § 1391(b)(1).

III. Transfer for the Convenience of the Parties and Witnesses

Defendant next argues that even if venue is proper in this district, the action should be transferred pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses. Grant or denial of a request to transfer a case under 28 U.S.C. § 1404(a) is within the sound discretion of the trial court. Hubbard v. White, 755 F.2d 692, 694 (8th Cir.1985). Courts generally give great deference to a plaintiffs choice of forum. Thus a party moving for transfer under 28 U.S.C. § 1404(a) must bear the burden of showing that transfer is justified. Terra Internat'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 695 (8th Cir.1997). Both parties argue that they have a number of witnesses who would have to travel if required to litigate in a distant forum. The undersigned finds that transferring this case to a venue more convenient to the defendant would not solve this dilemma, it would merely shift the burden from the defendant to the plaintiff. This is not a sufficient showing of inconvenience to overcome the defendant's burden under 28 U.S.C. § 1404(a).

IV. Declaratory Judgment

Finally, Defendant argues that the case should be dismissed because the plaintiffs counts seeking declaratory judgment are an improper preemptive strike to a trademark infringement action and an attempt to choose the forum for resolution of the dispute between the parties. Plaintiff responds that it is entitled to declaratory judgment under the Declaratory Judgment Act, 22 U.S.C. § 2201, and under Eighth Circuit law.
Declaratory judgment actions are common in matters of patent, copyright, or trademark infringement. Verizon Communications, Inc. v. Inverizon Internat'l, Inc., 295 F.3d 870, 873 (8th Cir.2002). Frequently, these actions are brought by a party seeking a declaration that it is not infringing upon a patent, copyright, or trademark. 10B Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 2761 (3d ed.1998). Whether to exercise jurisdiction under the Declaratory Judgment Act is within the discretion of the trial court. Century Indemnity Co. v. McGillacuty's, Inc., 820 F.2d 269, 270 (8th Cir.1987)(citing Green v. Mansour, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)). The Declaratory Judgment Act authorizes a federal court to "declare the rights and other legal relations of any interested party" in a "case of actual controversy." 28 U.S.C. § 2201. An actual controversy has been defined as "a substantial controversy, between parties having adverse legal interests, *1023 of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Diagnostic Unit Inmate Council v. Films Inc., 88 F.3d 651, 652 (8th Cir. 1996) (quoting Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)). The Eighth Circuit has outlined two criteria for a court to use in determining whether it should exercise its jurisdiction under the Declaratory Judgment Act. The court is first to ask whether declaratory judgment will "serve a useful purpose in clarifying and settling" the legal dispute in issue. Second the court should determine whether such judgment will "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings." Alsager v. Dist. Court of Polk County, Iowa, 518 F.2d 1160, 1162 (8th Cir.1975).
A declaratory judgment will clarify and settle the disputes between these parties. In its May 16, 2002, letter, All Sports indicated that it was preparing a law suit against Anheuser-Busch for copyright, trademark, and trade dress infringement; tortious interference; trade secret misappropriation; and fraudulent misrepresentation. These are the same issues upon which Anheuser-Busch now seeks declaratory relief. Further, a declaratory judgment as to the counts of trademark infringement will afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings. Having been put on notice that a lawsuit was being prepared against it, and negotiations between the parties having failed, the plaintiff was justified in seeking declaratory relief in this court in order to resolve the unambiguous disputes between the parties. The plaintiff had the right to do so under 28 U.S.C. § 2201. Furthermore, Anheuser-Busch has a legitimate interest in having its claims of non-infringement resolved quickly because it has already begun plans for its upcoming 2003 bubble hockey tournament. In the interest of time, Anheuser-Busch should not be required to wait for All Sports to file suit against it.
This is not a case where both parties have filed similar suits in competing forums. Thus far only the Eastern District of Missouri has expended time and energy in resolving this dispute. In the interest of judicial economy. It is prudent to keep the action in this forum to achieve a resolution between the parties. Nor is this a case where a Pennsylvania district court is better equipped to hear this case. Because the claims arise under federal and not state law, this court is as capable of resolving the disputes between the parties as is the Eastern District of Pennsylvania.
Therefore, for all the foregoing reasons,
IT IS HEREBY ORDERED that the defendant All Sports Arena Amusement, Inc.'s Motion to Dismiss or Transfer (Filed July 30, 2002/Docket No. 25) is denied.
NOTES
[1] Anheuser-Busch, Inc. is a brewer and marketer of beer. It is incorporated in the state of Missouri with its principal place of business in St. Louis, Missouri.
[2] All Sports Arena Amusement, Inc. sells and markets sports amusement games. It is incorporated in Pennsylvania with its principal place of business in Langhorne, Pennsylvania.
[3] Because the undersigned has determined that the defendant had sufficient contacts with Missouri under the transaction of business prong of the long-arm statute, there is no need to discuss whether the defendant made a contract in the state of Missouri or whether the defendant committed a tortious act within the state.