# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 02-2477

_____

| | | |
|---|---|---|
| Scott B. Lakin, Director of the Department of Insurance for the State of Missouri, in his statutory capacity as Liquidator of International Financial Services Life Insurance Company; George Dale, Commissioner of Insurance for the State of Mississippi, in his statutory capacity as Liquidator of Franklin Company Family Guarantee Life Insurance Company, and First National Life Insurance Company of America; Anne B. Pope, Commissioner of Commerce for the State of Tennessee in her statutory capacity as a Liquidator of Franklin American Life Insurance Company; Carroll Fisher, Insurance Commissioner for the State of Oklahoma, in his statutory capacity as Receiver of Farmers and Ranchers Life Insurance Company in Liquidation, | * * * * * * * * * * * * * * * * * * | |
| | * | Appeal from the United States |
| | * | District Court for the |
| | * | Western District of Missouri. |
| | * | |
| Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| Prudential Securities, Inc.; Prudential Investments, Inc., | * * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  December 12, 2002

Filed:  November 4, 2003
_____

Before BOWMAN, RILEY, and SMITH, Circuit Judges.
_____

SMITH, Circuit Judge.

Appellants filed suit in Missouri state court, alleging claims of negligence, breach of contract, and breach of fiduciary duties. After removal, Appellee Prudential Savings Bank ("Prudential Savings") moved for dismissal for lack of personal jurisdiction. Appellants resisted the motion and filed a request for jurisdictional discovery. The district court then granted Prudential Securities' motion and denied appellants' request. We affirm in part, reverse in part, and remand for jurisdictional discovery.

I.

Beginning in 1991 a group of individuals–including Martin Frankel, John Hackney, Gary Atnip, and others–acquired and ran several insurance companies. After acquiring the companies, they allegedly engaged in an elaborate looting scheme, which converted and misappropriated the assets and funds of these insurance companies. The insurance companies are now insolvent and in receivership. Appellants serve as the court-appointed receivers of these insurance companies, which are located in their respective states–Missouri, Mississippi, Tennessee, and Oklahoma.

Appellee Prudential Savings is a federally-chartered savings bank. Its principal place of business and its home office are located in the State of Georgia. In December

1998, as part of the scheme, Hackney opened a custody account at Prudential Savings on behalf of Franklin American Life Insurance Company ("FAL"), a Tennessee-domiciled insurance company. On December 28, 1999, the account received a deposit of approximately $69 million; allegedly that money was later transferred to another bank account in Tennessee and then to Frankel's Swiss bank account.

After the alleged fraud was exposed and the insurance companies went insolvent, appellants filed a complaint against Prudential Savings and others[1] in Missouri state court. In pertinent part, the suit alleged that Prudential Savings was negligent and breached its contractual and fiduciary duties to FAL when it allegedly permitted the $69 million to be released to Frankel without proper instruction from FAL's officers. After the suit was filed, the case was removed to the United States District Court for the Western District of Missouri.

Prudential Savings then filed a motion to dismiss for lack of personal jurisdiction, arguing that it has only one physical office–located in Georgia–and that it has virtually no contact with Missouri residents. Appellants countered that from December 1998 to June 2001, Prudential Savings did have sufficient contacts with the State of Missouri. Appellants noted that Prudential Savings maintained home-equity loans and lines of credit to Missouri residents totaling around $10 million, or one percent of its loan portfolio. In addition, appellants noted that Prudential Savings maintained a Web site–www.prudential.com/banking[2]–on which Prudential Savings' services are offered to Missouri residents. As an alternative, appellants requested

---

[1] Appellants also sued Prudential Securities, Inc. and Prudential Investments, Inc. Prudential Securities is headquartered in New York, while Prudential Investments does business in Missouri. Neither challenged personal jurisdiction.

[2] As of October 2001, the Prudential Web site was located at www.prufn.com. This address now automatically redirects users to Prudential's current Web site–www. prudential.com

leave for jurisdictional discovery. The district court, however, disagreed with appellants, granted Prudential Services' motion to dismiss, and denied appellants' motion for jurisdictional discovery. For the reasons stated below, we affirm in part, reverse in part, and remand for jurisdictional discovery.

II.

We review de novo whether appellants have presented a prima facie case[3] of personal jurisdiction, viewing the evidence in the light most favorable to the appellants and resolving all factual conflicts in their favor. *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). As we sit in diversity for this suit, our analysis of personal jurisdiction involves two steps. We first must consider whether the State of Missouri would accept jurisdiction under the facts of this case. *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir. 1993). Then, we must determine whether that exercise of jurisdiction comports with Constitutional Due Process restrictions. *Id.*

A. Jurisdiction

The Supreme Court has noted that states exercise two broad types of personal jurisdiction: specific jurisdiction and general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8–9 (1984). Specific jurisdiction refers to jurisdiction over causes of action that "arise out of" or "relate to" a defendant's activities within a state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). General jurisdiction, "on the other hand, refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Sondergard*, 985 F.2d at 1392 (citation omitted); *see also Helicopteros*, 466 U.S. at 414 & n.9.

---

[3] In order to survive a motion to dismiss for lack of personal jurisdiction, appellants need only make a prima facie showing of personal jurisdiction over Prudential Savings. *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir.1996).

Appellants first argue that they have established a prima facie case of specific jurisdiction. However, a prima facie case of specific personal jurisdiction can only be established if Prudential Savings "has purposefully directed [its] activities at [Missouri] residents," and the claim of this suit either "arises out of" or "relates to" these activities. *Burger King*, 471 U.S. at 472 (citation omitted); *see also State ex rel. Newport v. Wiesman*, 627 S.W.2d 874, 876 (Mo. 1982) (en banc) (extending the Missouri long-arm statute to the extent permissible under the Due Process Clause). Here, the cause of action alleged–that Prudential Savings was negligent and breached its contractual and fiduciary duties to FAL–is entirely unrelated to Prudential Securities' activities in Missouri. Rather, the cause of action "arises out of" and "relates to" activities in the State of Tennessee. As a result, appellants' argument for specific jurisdiction fails.

Appellants next argue that the facts of this case–specifically Prudential Securities' Web site and its home-equity loans and lines of credit to Missouri residents[4]–are sufficient to establish general jurisdiction over Prudential Securities. Thus, we must examine whether Missouri "has authorized the exercise of general jurisdiction over non-resident corporations, and whether it would apply the doctrine in this case." *Sondergard*, 985 F.2d at 1392.

The Missouri Supreme Court has long held that a "foreign corporation present and conducting substantial business in Missouri" is subject to the jurisdiction of Missouri courts. *State ex rel. K-Mart Corp. v. Holliger*, 986 S.W.2d 165, 167 (Mo. 1999) (en banc) (citing cases holding the same from 1907 forward). Missouri courts have interpreted the phrase "present and conducting substantial business" to mean that jurisdiction will be established if a non-resident corporation has "substantial" and

---

[4] Appellants also cite a third factor–Mo. Rev. Stat. § 351.572.2 (2000)–as a reason to support general jurisdiction over Prudential Securities. We find this argument to be misplaced and without merit.

"continuous" contacts with the State of Missouri.[5] *Sloan-Roberts v. Morse Chevrolet, Inc.*, 44 S.W.3d 402, 409 (Mo. Ct. App. 2001) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945); *see also Shouse v. RFB Constr. Co., Inc.*, 10 S.W.3d 189, 193 (Mo. Ct. App. 1999). This is identical to the federal due process requirements. *See Int'l Shoe*, 326 U.S. at 318; *see also Helicopteros*, 466 U.S. at 415; *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445 (1952).

Having determined that Missouri courts have authorized general jurisdiction, we must now determine if a Missouri court would apply the doctrine in this case. Generally, Missouri courts–like most courts–are hesitant to "exercise general jurisdiction over non-resident defendants." *Sloan-Roberts*, 44 S.W.3d at 410; *see also Davis v. Baylor Univ.*, 976 S.W.2d 5, 7–8 (Mo. Ct. App. 1998). Nevertheless, after reviewing the relevant factors and the applicable law, we conclude that appellants could establish a case of general personal jurisdiction if they are permitted to take jurisdictional discovery on remand.

## 1. Business Contacts

First, from December 1998 to June 2001, Prudential Savings maintained home-equity loans and lines of credit to persons in Missouri. These contacts are continuous. Home-equity loans and lines of credit are not single point-of-sale transactions.

---

[5] It bears mentioning that several district courts in our Circuit have previously come to the puzzling conclusion that "the Missouri long-arm statute prohibits the exercise of general personal jurisdiction over a nonresident defendant." *United Mo. Bank, N.A. v. Bank of N.Y.*, 723 F. Supp. 408, 411 (W.D. Mo. 1989); *see also Wooldridge v. Beech Aircraft Co.*, 479 F. Supp. 1041 (W.D. Mo. 1979). To spare future courts any confusion, we hold today that such cases were erroneously decided. Other courts agree. *In re Tex. Prisoner Litig.*, 41 F. Supp. 2d 960, 962 (W.D. Mo. 1999); *see also K-Mart*, 986 S.W.2d at 168 n.3 ("If the *Bank of New York* case is read to limit general jurisdiction based upon activities in Missouri, the case may be inconsistent with some of our precedents.").

Rather, the terms of these loans are typically measured in months and years–creating continuous long-term contacts with the State of Missouri.

Appellants also argue that these business contacts are substantial because they total approximately $10 million. Prudential Securities counters that the home-equity loans and lines of credit only makes up one percent of their total loan portfolio. They therefore reason that the contacts should be considered insubstantial to establish general jurisdiction.[6] While Missouri courts have not commented on whether percentages of a non-resident corporation's total business in a forum state should be given special consideration in this determination, at least one of our sister circuits has directly addressed this issue. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437–38 (3d Cir. 1987) (dealing with this issue in a very similar factual scenario).[7]

---

[6] Prudential Securities also argues that these contacts are insubstantial because it has no offices, employees, or registered agents in the State of Missouri.

[7] Other circuits, while not addressing this issue directly, have considered the percentage of a company's total business as just one of the factors to consider in a general personal jurisdiction analysis–with varying results. *Compare Provident*, 819 F.2d at 437–38; *Mich. Nat'l Bank v. Quality Dinette, Inc.*, 888 F.2d 462, 465–66 (6th Cir. 1989) (furniture machine manufacturer, whose sales in Michigan accounted for three percent of its total sales when combined with other factors were sufficient contacts for general jurisdiction); *Gator.com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072, 1074, 1076–79 (9th Cir. 2003) (general jurisdiction found where defendant's sole contacts were its Internet Web site and sales in the State of California, which accounted for six percent of its total sales) *with Dalton v. R & W Marine, Inc.* 897 F.2d 1359, 1362 (5th Cir. 1990) (company's ownership of several boats in the state, which accounted for thirteen percent of its total revenues, were insufficient for general jurisdiction); *Nichols v. G.D. Searle & Co.*, 991 F.3d 1195, 1200 (4th Cir. 1993) (company who had two percent of total sales in Maryland when combined with other factors did not have sufficient contacts for general jurisdiction); *Stairmaster Sport/Med. Prod. Inc.*, 916 F. Supp. 1049, 1052–53 (W.D. Wash. 1995), *aff'd* 78 F.3d 602 (Fed. Cir. 1996) (mem.) (no general jurisdiction for company that had isolated visits and three percent of its total sales volume in Washington).

In *Provident*, Pennsylvania-based plaintiff Provident sued defendant California Federal in Pennsylvania. *Id.* at 435. California Federal, a federally-chartered bank, whose headquarters were located in California, had 138 branch offices in California, thirty-seven in Florida, thirteen in Georgia, and six in Nevada, but no branches in Pennsylvania. *Id.* at 436. Moreover, it "maintained no Pennsylvania office, employees, agents, mailing address, or telephone number. It had not applied to do business in Pennsylvania, did no advertising in Pennsylvania, and paid no taxes there." *Id.* During the relevant period, California Federal had about $10 million in outstanding loans with Pennsylvania residents. *Id.* This, however, only amounted to .083% of California Federal's total loan portfolio of $12 billion. *Id.* California Federal also had Pennsylvania depositors, whose total deposits amounted to around $10 million, or .071% of its total deposits.

California Federal argued that the action should be dismissed for lack of general personal jurisdiction. It further argued that if a company does a small percentage of its business in a state, then such percentage should create a presumption for a lack of jurisdiction. The Court of Appeals disagreed, noting that "the size of the percentage of California Federal's total business represented by its Pennsylvania contacts is in general irrelevant . . . ." *Id.* at 438; *see also Gehlin v. St. George's School of Medicine, Ltd.*, 773 F.2d 539, 543 (3d Cir. 1985) (stating the same, but finding no jurisdiction). Likewise, it did not find the "absolute amount of dollars" completely persuasive. Instead, it found more convincing the nature of the deposits and the fact that the loans and deposits were "central to the conduct of its business." *Id.* Finally, the court found significant the fact that California Federal "can become the owner of a loan secured by property in Pennsylvania. . . ." *Provident*, 819 F.2d at 438 (citation omitted).

We agree. Percentage of a company's sales in a given state are generally irrelevant. Instead, our focus is on whether a defendant's activity in the forum state

is "continuous and systematic." *Helicopteros*, 466 U.S. at 414. Many companies conduct millions of dollars in sales worldwide yet only do a small percentage of their sales in any one state. *E.g.*, *L.L. Bean, Inc.*, 341 F.3d at 1074 (sales in California for L.L. Bean, Inc. only accounted for six percent of its total sales). However, our relevant inquiry is not whether the percentage of a company's contacts is substantial for that company; rather, our inquiry focuses on whether the company's contacts are substantial for the *forum.*

As the record stands, Prudential Securities' contacts are substantial. Prudential Securities has nearly $10 million in its Missouri loan portfolio. Because home-equity loans and lines of credit can represent indebtedness of as little as a few thousand dollars,[8] $10 million in such loans can represent the establishment of lending relationships with hundreds, if not thousands of Missouri residents. Moreover, it is noteworthy that home-equity loans and lines of credit are "central to the conduct of [Prudential Securities'] business." *Provident*, 819 F.2d at 438. While it is true that the loans were made in Georgia, it is likely that such loans are secured with Missouri residents' property, which was used as collateral for the loan. *See* Mo. Rev. Stat. § 443 et seq. If this is true, then Prudential Security will have liens on hundreds to thousands of pieces of real property in Missouri and the power to use Missouri courts to enforce them. *See* Mo. Rev. Stat. §§ 443.190, 443.290. However, it is unclear from the record if this is the case. Appellants must be permitted to have the opportunity to establish these facts through jurisdictional discovery.

---

[8] *See* Cathy Lesser Mansfield, *The Road to Subprime "HEL" Was Paved with Good Congressional Intentions: Usury Deregulation and the Subprime Home Equity Market*, 51 S.C. L. Rev. 473, 523 (2000) (stating that by 1994 about 8.2 million households had "home equity debt totaling about $255 billion" (equaling an average of over $30,000 per household)); *cf.* I.R.C. §163(h)(3) (capping the amount of interest deduction on a home-equity loan at $100,000; $50,000 in the case of a separate return by a married individual)).

## 2. Internet Contacts

Second, appellants assert that Prudential Securities' Web site should render it subject to general jurisdiction. Missouri courts have not yet addressed whether a Web site may provide sufficient "minimum contacts" to invoke personal jurisdiction.[9] Neither have we. However, many of our sister circuits have. Unfortunately, the majority of these cases address whether a Web site can provide sufficient contacts to invoke specific jurisdiction. *E.g.*, *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, (3d Cir. 2003) (specific jurisdiction in trademark infringement case); *ALS Scan, Inc. v. Digital Serv. Consult., Inc.*, 293 F.3d 707 (4th Cir. 2002) (same); *Bensusan Rest. Corp. v. King*, 126 F.3d 25 (2d Cir. 1997) (same); *Cybersell, Inc., v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997) (same); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996) (same); *see also Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002) (specific jurisdiction for defamation action).

The great majority of these cases have adopted the analytical framework of *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). In *Zippo*–also a case of specific jurisdiction–the court examined the few cases that had previously addressed the issue of whether a Web site could provide sufficient contacts for specific personal jurisdiction. It applied the results of these cases to the traditional personal jurisdiction analytical framework, noting that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the commercial activity that an entity conducts over the Internet." 952 F. Supp. at 1124. In order to measure the nature and quality of the

---

[9] In one opinion, however, the Missouri Court of Appeals mentioned the level of interactivity of a Web site–apparently alluding to the *Zippo* test. *See State ex rel. Nixon v. Beer Nuts, Ltd.*, 29 S.W.3d 828, 830, 835 (Mo. Ct. App. 2000) ("In the summer and fall of 1997, Beer Nuts' website fell in the middle range of websites accessible on the web in terms of its sophistication and interactivity."). As it appeared only in the factual summary, however, it played no part in the court's specific personal jurisdiction determination. Thus, it is not binding upon us.

commercial activity, the court created a "sliding scale" to measure the likelihood of personal jurisdiction. It noted:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* (citations omitted).

We agree with our sister circuits that the *Zippo* model is an appropriate approach in cases of specific jurisdiction–i.e., ones in which we need only find "minimum contacts." However, we are presented with a case of general personal jurisdiction–i.e., one in which we must find "substantial and continuous" contacts. The circuits that have addressed which analytical model to apply to a case of general jurisdiction have split on whether to accept the *Zippo* "sliding scale." *Compare L.L. Bean*, 341 F.3d at 1079 (applying *Zippo* and finding general jurisdiction); *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 513 (D.C. Cir. 2002) (same); *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1296–97 (10th Cir. 1999) (applying *Zippo*, but finding no general jurisdiction) *with Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002) (noting that the *Zippo* sliding scale "is not well adapted to the general jurisdiction inquiry"); *Bell v. Imperial Palace Hotel/Casino, Inc.*, 200 F. Supp.2d 1082, 1091 (E.D. Mo. 2001) (noting that while the "sliding scale suggested by the

court in *Zippo* may be a relevant factor in assessing general jurisdiction, it is not alone determinative") (footnote omitted).

We agree with the courts that do not apply the "sliding scale" presumptively for cases of general jurisdiction. Certainly, we believe that a consideration of the "nature and quality" of a Web site and a determination of whether it is "interactive," "does business," or is merely "passive" is an important factor in our analysis. However, we have long held that the "nature and quality" of contacts is only one factor to consider. Instead, we consider a variety of factors–depending on the circumstance–in a personal jurisdiction analysis. *Aftanse v. Econ. Baler Co.*, 343 F.2d 187, 197 (8th Cir. 1965) (creating the five factors to consider for personal jurisdiction and applying them depending on their relevance to the case).

We first discussed the factors in *Aftanse*. In this 1965 case, Judge Harry Blackmun[10] analyzed and summarized the controlling United States Supreme Court cases on the subject of personal jurisdiction. *Id.* at 195–96 (summarizing *Hanson v. Denckla*, 357 U.S. 235 (1958); *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957); *Perkins*, 342 U.S. at 437; *Travelers Health Ass'n v. Virginia ex rel. State Corp. Comm'n*, 339 U.S. 643 (1950); *Int'l Shoe*, 326 U.S. at 310). Judge Blackmun then observed that each of these cases established "general" instead of "precise guidelines," but that each of the cases had several factors, which the Supreme Court repeatedly identified. *Id.* at 197. Specifically, Judge Blackmun noted that:

> [A]t one time or another in the opinions, three primary factors, namely, the quantity of the contacts, the nature and quality of the contacts, and the source and connection of the cause of action with those contacts, are stressed, and that two others, the interest of the forum state and convenience of the parties, receive mention.

---

[10] Prior to assuming his seat as an Associate Justice of the United States Supreme Court, Justice Blackmun served as a judge on this Court.

*Id.* It is apparent that the primary factors relate to our consideration of a defendant's contacts.[11] At a minimum, in a specific jurisdiction case we will consider the last two of the primary factors–"the nature and quality of the contacts, and [their] source and connection" to "the cause of action." In such a case, the *Zippo* test would function appropriately. However, in a general jurisdiction case, we do not consider the "source and connection" to "the cause of action," but rather we consider the "nature and quality of the contacts" as well as the "quantity of the contacts." *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994) (citations omitted) (distinguishing general jurisdiction from specific jurisdiction). This is precisely why the *Zippo* test alone is insufficient for the general jurisdiction setting.

Under the *Zippo* test, it is possible for a Web site to be very interactive, but to have no quantity of contacts. In other words, the contacts would be continuous, but not *substantial*. This is untenable in a general jurisdiction analysis. As one court has noted, the *Zippo* test "is not well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction . . . ." *Revell*, 317 F.3d at 471. As a result, we will first apply the *Zippo* test and then also look at the quantity of those contacts with Missouri residents.

Prudential Securities' Web site–www.prudential.com/banking–falls under the middle category of *Zippo*–a sophisticated, interactive Web site in which a user can exchange information with the host computer. Not only can Missouri consumers review detailed company, service, and financial information about Prudential Savings, they can also exchange electronic mail; establish and access secure online accounts; and calculate home-mortgage rates. More importantly, Missouri consumers

---

[11] It is equally apparent that the secondary factors, i.e., "the interest of the forum state and convenience of the parties" relate to our consideration of "traditional notions of fair play and substantial justice" in our reasonableness analysis. We consider these factors in Part II.B, *infra*.

-13-

are also able to complete online applications for home-equity loans and lines of credit. The site states that it provides electronic responses to the inquiry within three to five business days. Through its Web site Prudential Savings could have continuous, significant contacts with Missouri residents. In fact, because its site is available twenty-four hours a day, it is possible for Prudential Securities "to have contacts with the [State of Missouri] that are 'continuous and systematic' to a degree that traditional foreign corporations can never even approach." *Gorman*, 293 F.3d at 513.

However, this is not sufficient for general jurisdiction. As noted, we must also consider the quantity of contacts that Prudential Securities'–through its Web site–has with Missouri residents. However, appellants were unable to conduct jurisdictional discovery prior to the district court's grant of Prudential Savings' motion to dismiss. As a result, the record contains no indication of: the number of times that Missouri consumers have accessed the Web site; the number of Missouri consumers that have requested further information about Prudential Savings' services; the number of Missouri consumers that have utilized the online loan-application services; the number of times that a Prudential Savings representative has responded to Missouri residents after they have applied for a loan; the number and amounts of home-equity or other loans that resulted from online-application submission by Missouri consumers, or which are secured by Missouri property.

Appellants did make such a motion. The district court, however, denied it. To not grant it was, in our view, an abuse of discretion. *Gen. Elec. Capital Corp. v. Grossman*, 991 F.2d 1376, 1388 (8th Cir. 1993) (applying an "abuse of discretion" standard when reviewing the denial of a request for jurisdictional discovery); *see also Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402–03 (4th Cir. 2003) (same standard of review in an Internet personal jurisdiction case); *Harris Rutsky & Co. Ins. Servs., v. Bell & Clements, Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (same standard of review and remanding for further jurisdictional discovery);

*Toys "R" Us, Inc.*, 318 F.3d at 455–58 (same standard of review and remanding for further jurisdictional discovery in an Internet personal jurisdiction case); *Gorman*, 293 F.3d at 513 (affirming on a different issue, but noting that it would otherwise remand for jurisdictional discovery in an Internet personal jurisdiction case); *Shouse*, 10 S.W.3d at 194–95 (Missouri appellate court remanding for jurisdictional discovery). As a result, if appellants can meet the second factor–i.e., the due process inquiry–then remand to the district court for further jurisdictional discovery is the appropriate disposition for this case.

### B. Due Process

Regardless of the number of contacts to support general jurisdiction, we will only reverse the order of the district court if the assertion of jurisdiction would be reasonable and not offend notions of "fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. In making this determination, we must consider "the burden on [Prudential Securities], the interests of [Missouri], and the [appellants'] interest in obtaining relief." *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987); *Schilling v. Hum. Supp. Serv.*, 978 S.W.2d 368, 371 (Mo. Ct. App. 1998). Additionally, we must also weigh "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Asahi Metals*, 480 U.S. at 113 (citation omitted); *Schilling*, 978 S.W.2d at 371.

A consideration of these factors demonstrates that there is adequate evidence in the record to conclude–if minimum contacts are present–that asserting jurisdiction over Prudential Securities would not violate due process. First, Missouri has a significant interest in giving insolvent insurance companies a forum in which to litigate their claims. Moreover, while it might be a burden for Prudential Securities to have to travel to Missouri, given the nature of this litigation, it does not seem overly burdensome. This litigation involves eight defunct insurance companies, who are fighting over twenty-two accounts from four different states. However, as alleged

by appellants, the underlying evidence for each is the same; each of the accounts was managed by the same broker. As a result, it would be a waste of judicial resources to have the parties relitigate this single insurance claim again in Georgia. It is much more efficient for all parties to have the litigation centered in one location. Therefore, as the record stands, the exercise of general jurisdiction does not offend "notions of fair play and substantial justice." However, it is possible that on remand other facts might come to light, which would require a different result.

## III.

We therefore affirm the district court's ruling that it lacked specific jurisdiction over Prudential Securities, reverse its ruling on general jurisdiction, and remand this matter to the district court for jurisdictional discovery and proceedings consistent with this opinion.

_____