SL MONTEVIDEO TECHNOLOGY, INC., Plaintiff,

v.

EATON AEROSPACE, LLC, and Astromec, Inc., Defendants.

No. Civ.03–3302 (RHK/FLN).

United States District Court, D. Minnesota.

Nov. 24, 2003.

Mark H. Verwys and Stephen R. Boehringer, Plunkett & Cooney, PC, Grand Rapids, Michigan, and David A. Engen, Baxter Engen, Ltd., Lakeville, Minnesota, for Plaintiff.

Elizabeth M. Bradshaw and Michael H. King, McGuire Woods LLP, Chicago, Illinois, and Frederick W. Morris and Timothy P. Griffin, Leonard, Street and Deinard, P.A., Minneapolis, Minnesota, for Defendants.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

This matter comes before the Court on Defendant Astromec, Inc.'s ("Astromec") and Defendant Eaton Aerospace, LLC's ("Eaton") (collectively, "Defendants") Rule 12(b)(6) Motion to Dismiss For Failure to State a Claim.[1] For the reasons set forth below, the Court will grant Defendants' Motion in part and deny it in part.

### Background

#### I. The Parties

Montevideo is a Minnesota corporation with its principal place of business in Montevideo, Minnesota. (Am.Compl.¶ 1.) Montevideo designs and manufactures high performance precision AC and DC motors, amplifiers, drivers, controllers and windings for aerospace, defense and industrial markets. (*Id.*)

Eaton is a Delaware limited liability company with its principal place of business in Cleveland, Ohio. (*Id.* ¶ 2.) Vickers, Incorporated ("Vickers") was Eaton's predecessor in interest and all of Vickers' assets and liabilities transferred to Eaton after Eaton acquired Vickers in 1999. (*Id.*) Eaton designs and manufactures fluid power, motion control, load management and avionics products and systems. (*Id.*)

Astromec is a Nevada corporation with its principal place of business in Carson City, Nevada. (*Id.* ¶ 3.) Astromec designs and manufactures custom fractional horsepower motors and other motion control products for aerospace, defense, commercial and industrial markets. (*Id.*)

#### II. Factual Background [2]

In 1994, Montevideo entered into a contract with Eaton under which Montevideo designed a brushless DC motor ("the Motor"). (Am.Compl.¶ 8.) Eaton used the Motor in producing a stabilizer trim unit, which adjusts the stabilizer on the tail section of commercial aircraft. (*Id.* ¶¶ 6–7.) Since 1994, Montevideo and Eaton have exchanged requests for quotes and purchase orders, and employees from both companies have visited the other's production facilities. (*Id.* ¶ 8.) Because of the unique nature of the Motor, Montevideo was concerned with protecting its proprietary engineering and technical information from disclosure to competitors. (*Id.* ¶ 9.) Eaton acknowledged Montevideo's concern, as evidenced by a proposed May 19, 1994 "Proprietary Rights Agreement" that Eaton's Contract Administrator, Jayne Neese, sent to Montevideo's Lynette Ray

---

1. Astromec also moves to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. The Court continues this matter, grants Montevideo's oral motion for limited jurisdictional discovery and orders supplemental briefing on the issue. The Court makes this determination based, in part, on the recent Eighth Circuit decision *Lakin v. Prudential Securities, Inc.,* 348 F.3d 704 (8th Cir.2003), which provides this Circuit's current analysis of the relationship between Internet websites and personal jurisdiction. The Court concludes that Montevideo's request for limited jurisdictional discovery, in light of *Lakin,* requires postponing a decision on this issue.

2. For the purposes of this Motion, the Court accepts Montevideo's allegations as true. Fed.R.Civ.P. 12(b)(6).

in connection with the Motor's development. (*Id.* ¶ 9(a).) The proposed agreement stated, in pertinent part,

All information relating to the DC–18000 BL which is revealed to Buyer is considered to be proprietary to SL Montevideo Technology Inc. (SL–MTI) and all rights therein are reserved. Buyer agrees to respect the confidential nature of the disclosure, oral and or written, and not disclose to others except to discuss it with company personnel who agree to respect the confidential nature of this information.

(*Id.*) Montevideo did not sign this proposal, but on May 23, 1994 Ray sent Neese a revised "Proprietary Information Agreement," which described the proprietary information, the care Eaton was to take with it, its ownership and the obligations of non-disclosure. (*Id.* ¶ 9(b).) This document, however, was not signed by Eaton. (*Id.*)

From 1994 to January 2000, there was no executed confidentiality agreement between Montevideo and Eaton. (*Id.* ¶ 9(c).) The lack of an executed written confidentiality agreement notwithstanding, the parties recognized the proprietary nature of the Motor, as shown by correspondence prior to, during and after a June 1996 stabilizer trim unit design meeting. (*Id.*)

From mid–1998 through the end of 1999, while Montevideo was manufacturing the Motor for Eaton, Eaton was attempting to develop a second source for the Motor. (*Id.* ¶ 10.) In May 1998, Eaton identified Astromec as the most viable candidate as a second source, and by December of that year Astromec prepared a motor development schedule, despite having never before designed or manufactured such a motor. (*Id.* ¶ 10(a), (b).) From January through October 1999, Astromec personnel visited Eaton's Grand Rapids, Michigan, production facility and Eaton prepared specifications and analyzed time lines for

using Astromec's motor. (*Id.* ¶ 10(c)-(f).) During the first week of November 1999, Eaton and Boeing personnel met with Montevideo personnel in Montevideo's production facility in Montevideo, Minnesota to conduct a design review of proposed changes to the motor. (*Id.* ¶ 10(g).) In these meetings, Eaton and Boeing personnel had access to Montevideo's facilities, including the Motor's design drawings and manufacturing areas. (*Id.*) After these meetings, Eaton and Boeing discussed obtaining a second source for the motor. (*Id.*) During mid-November 1999, Eaton personnel met with Astromec personnel at Eaton's Grand Rapids, Michigan, facility to discuss Astromec's motor. (*Id.* ¶ 10(h).)

On January 27, 2000, Montevideo and Eaton signed a "Proprietary Information Agreement" ("the 2000 Agreement") effective January 17, 2000. (*Id.* ¶ 13; *see* Griffin Decl. Ex. A (2000 Agreement).) The 2000 Agreement provides, in pertinent part:

For the mutual benefit of the Parties, the Parties hereto desire to exchange proprietary technical data and information (hereinafter "Proprietary Information") relating to Brushless DC Motor ... which the disclosing Party ... considers to be proprietary and confidential. . . .

The Parties acknowledge the exchange of some Proprietary Information prior to the execution of this Agreement and agree to treat said exchange(s) in accordance herewith. Each party shall keep in confidence and not disclose to any person ... provided, however, that neither Party shall be liable for use or disclosure of any such Information if the same:

a) were in the public domain . . . ;

b) were known to the receiving party at the time of disclosure . . . ;

c) is disclosed to others on a non-restricted basis by the party claiming proprietary rights thereto;

d) is independently developed by the receiving party without reference to the information of the disclosing party. . . .

This Agreement is the complete and exclusive expression for the Agreement between the parties, [and] supercedes all prior understandings or communications between the parties. . . .

(*Id.* ¶ 13; *see* Griffin Decl. Ex. A (2000 Agreement "Recitals," ¶¶ 3, 12).)

Covered "Propriety Information" is defined as information which:

a) is recorded information, regardless of the form or method of recording, of a scientific or technical nature . . . including, but not limited to, drawings, specifications, computer software and financial information, which has been marked as proprietary (or with words of similar meaning) by a stamp or other written or recorded identification by the originating party prior to disclosure or after disclosure if the Proprietary Information was inadvertently not marked prior to disclosure;

b) if in oral or visual form, has been preceded by an assertion of "proprietary" (or after disclosure if the Proprietary Information was inadvertently disclosed prior to assertion of "proprietary"); and has been subsequently reduced to a written or recorded form which identifies that oral or visual disclosure as Proprietary Information by a stamp or other tangible medium, and delivered to the receiving party within thirty (30) days of such oral or visual disclosure.

(Griffin Aff. Ex. A (2000 Agreement ¶ 2).)

■ At the time of the execution of the 2000 Agreement, Eaton possessed the Motor's design drawings, recognized the Motor's unique dimensions and materials, and realized that it could not use Montevideo's Motor to design a second source Motor. (Am.Compl.¶ 14(a)-(h).) Eaton continued to have contact with Astromec and imparted to Astromec proprietary and confidential information regarding the Motor. (*Id.* ¶ 15.) Astromec then began manufacturing its brushless motor, which Eaton now uses in place of Montevideo's Motor. (*Id.* ¶¶ 15–19.) Astromec has never had any commercial contact with Montevideo and has never designed such a motor before. (*Id.* ¶¶ 19–20.) [3]

### Standard of Review

Under Rule 12(b)(6), all factual allegations must be accepted as true and every reasonable inference must be granted in favor of the complainant. Fed.R.Civ.P. 12(b)(6); *see Midwestern Mach., Inc. v. Northwest Airlines, Inc.*, 167 F.3d 439, 441 (8th Cir.1999); *Carney v. Houston*, 33 F.3d 893, 894 (8th Cir.1994). "[D]ismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and destined to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir.2001) (citation omitted). A cause of action "should not be dismissed for failure to state a claim unless it appears be-

---

**3.** The Court will not consider Montevideo's citations to the minutes of a 1996 meeting or to the Blair, Zigweld, Zebrosky and Kay depositions. (*See* Pl.'s Mem. in Opp'n at 23–26.) These materials go beyond the Amended Complaint and are not "necessarily em-

braced" by it. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir.1999); *Jenisio v. Ozark Airlines, Inc. Ret. Plan for Agent & Clerical Employees*, 187 F.3d 970, 972 n. 3 (8th Cir.1999); Fed.R.Civ.P. 12(b).

yond doubt that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 740 (8th Cir.2002) (citations omitted). In analyzing the adequacy of a complaint's allegations under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those facts. *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir.2002). In treating the factual allegations as true, however, the Court need not accept as true wholly conclusory allegations, *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir.1998), and will not "blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir.1990) (citation omitted).

### Analysis

The Defendants move to dismiss each count of Montevideo's five count Amended Complaint for failing to state a claim. Montevideo's Amended Complaint alleges: (1) Count I—breach of express contract against Eaton, (2) Count II—breach of implied contract against Eaton, (3) Count III—tortious interference with contract against Astromec, (4) Count IV—misappropriation of trade secrets against both Defendants, and (5) Count V—conversion against both Defendants. (Am. Compl.¶¶ 21–41.) The Court will begin its analysis with the statutory claim.

---

4. Defendants contend that Montevideo fails to show why Minnesota law applies. (Def.'s Mem. in Supp. at III.B.5.c.) Defendants, however, have not shown that a conflict exists between Minnesota law and that of Delaware, Michigan, Nevada or Ohio warranting a choice of law analysis. *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 604 N.W.2d 91, 93–94 (Minn.2000). In fact, these States have adopted the Uniform Trade Secrets Act. *See* 6

### I. Count IV—Misappropriation of Trade Secrets (Eaton and Astromec)

The Minnesota Uniform Trade Secrets Act ("the Act") protects trade secrets from misappropriation.[4] *Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890, 897 (Minn.1983); Minn.Stat. § 325C.01–.08. The existence of a trade secret depends on three factors: (1) the information must not be generally known or readily ascertainable, (2) the information must derive independent economic value from secrecy, and (3) the party asserting the misappropriation must have made reasonable efforts to maintain secrecy of the item. *Luigino's, Inc. v. Peterson*, Civ. No. 00–1246 (DWF/RLE), 2002 WL 122389, at *8 (D.Minn. Jan. 28, 2002). Although absolute secrecy is not required, the confidential measures must be "reasonable under the circumstances." *Id.* (citation and internal quotations omitted).

Defendants contend that this claim must be dismissed because Montevideo's conclusory allegations fail to identify the alleged trade secret or its misappropriation. (Defs.' Mem. in Supp. at III.B.4 & 5.) Montevideo responds that it has sufficiently alleged a cause of action under the Act and that its Complaint complies with the Federal Rules's liberal notice pleading standard. (Pl.'s Mem. in Opp'n at 18–31.)

Montevideo has stated a claim for misappropriation of trade secrets. The Amended Complaint alleges that the Motor design is not generally known or readily ascertainable (Am.Compl.¶¶ 7–10, 35)

---

Del.Code §§ 2001–2009; Mich. Comp. Laws §§ 445.1901–445.1910; Nev Rev. Stat. §§ 600A.010–600A.100; Ohio Rev.Code §§ 1333.61–1333.69. Because Defendants have not shown a conflict of law and Montevideo alleges that events giving rise to their claims occurred in Minnesota (Am. Compl.¶ 5), the Court will apply Minnesota law.

and implies that the Motor derived independent economic value from not being generally known (*see id.* ¶¶ 7–9). Although Montevideo allowed Eaton and Boeing access to the Motor, Montevideo asserts that it made reasonable efforts to maintain the Motor's secrecy. (*Id.* ¶¶ 9–13, 37.) In addition, Montevideo has alleged that Eaton misappropriated the trade secrets by disclosing them to Astromec. (*See* Am. Compl. ¶¶ 10, 15–16.)

■ While Defendants bring this Motion under Rule 12(b)(6), their arguments do not go to whether Montevideo's trade secret claim is recognized by law, as required under Rule 12(b)(6), but rather whether Montevideo states its claim with sufficient detail, as required by Rule 8. The proper motion in such a case is not a motion to dismiss under Rule 12(b)(6), but a motion for a more definite statement under Rule 12(e). *Radisson Hotels Int'l, Inc. v. Westin Hotel Co.,* 931 F.Supp. 638, 643 n. 5 (D.Minn.1996). While Defendants have not filed a 12(e) motion, Montevideo's Amended Complaint complies with Rule 8 by notifying Defendants of Montevideo's trade secret claim and the grounds upon which it rests. Rule 8 does not require the specificity Defendants seek. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Alpine Eng'rd Prods., Inc. v. Newby,* Civ. No. 00–2597 (ADM/SRN), 2001 WL 392027, at *2 (D.Minn. Mar. 16, 2001). The exact nature of the trade secret is a matter for discovery. Accordingly, the Court will deny Defendants' Motion with respect this claim.

## II.  Count III & Count V—Tortious Interference With Contract (Astromec) & Conversion (Astromec and Eaton)

■ Defendants move to dismiss Montevideo's claim for tortious interference with contract and its claim for conversion because they are displaced by the Act. The Act states that it "displace[s] conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Minn.Stat. § 325C.07(a). The Act does not, however, affect contractual remedies, other civil remedies not based upon misappropriation of a trade secret, or criminal remedies. *Id.* § 325C.07(b). This displacement provision has been interpreted to allow plaintiffs to maintain separate causes of action "to the extent that the causes of action have 'more' to their factual allegations than the mere misuse or misappropriation of trade secrets." *Micro Display Sys., Inc. v. Axtel, Inc.,* 699 F.Supp. 202, 205 (D.Minn.1988).

Montevideo's tortious interference with contract and conversion claims are displaced by the Act. Neither contains "more" to its factual allegations than the mere misuse or misappropriation of trade secrets. *Id.* Montevideo's tortious interference claim alleges that "Astromec … tortiously interfered with the [2000] Agreement and the implied contract of confidentiality between Eaton and [Montevideo] *by soliciting and receiving [Montevideo's Motor] trade secrets, so as to procure Eaton's breach of its confidential relationship with [Montevideo]* without justification." (Am. Compl. ¶ 29 (emphasis added).) Essentially, Montevideo alleges that Astromec interfered with the Eaton–Montevideo confidentiality agreement by misappropriating Montevideo's trade secrets. Similarly, Montevideo's conversion claim alleges that "Eaton and/or Astromec *converted [Montevideo's] trade secrets and wrongfully used the trade secrets* for their own gain." (*Id.* at 14 (mis-numbered ¶ 38) (emphasis added).) Essentially, Defendants' alleged conversion was nothing more than misappropriation of trade secrets. Because the

factual allegations of both claims allege nothing more than misappropriation of trade secrets, they are displaced by the Act and will be dismissed.

### III. Count I—Breach of Express Contract (Eaton)

■ Eaton moves to dismiss Montevideo's claim for breach of express contract. The parties agree that each signed the 2000 Agreement, effective January 17, 2000, which required Eaton to keep Montevideo's proprietary information confidential. (*See* Griffin Decl. Ex. A.) Eaton contends that this claim must be dismissed because the 2000 Agreement was not in effect when the alleged trade secret disclosures occurred and that Montevideo's allegations are conclusory. (Defs.' Mem. in Supp. at III.B.4.a & b.) Montevideo responds that Eaton agreed to treat the proprietary information it obtained prior to January 17, 2000 in accordance with the 2000 Agreement and that its Amended Complaint meets the Federal Rule's pleading requirements. (*See* Pl.'s Mem. in Opp'n at 18–26.)

Montevideo has stated a claim for breach of express contract. The Amended Complaint alleges the existence of a contract (Am.Compl.¶¶ 13, 21), its breach while it was in effect (*id.* ¶¶ 15–16, 22) and damages (*id.* ¶ 23). Although the 2000 Agreement was not executed until January 17, 2000, Eaton acknowledged that prior to the agreement some proprietary information was exchanged between the parties, and that it would treat Montevideo's information in accordance with the 2000 Agreement. (Am. Compl. ¶ 13; *see* Griffin Decl. Ex. A.) Furthermore, Defendants' specificity argument does not go to whether the claim is recognized by law, as required under Rule 12(b)(6). *Radisson Hotels*, 931 F.Supp. at 643 n. 5. Montevideo's Complaint is sufficiently specific to provide notice of its claims. *See Leatherman*, 507 U.S. at 168, 113 S.Ct. 1160; Fed.R.Civ.P.

8. Accordingly, the Court will deny Eaton's motion to dismiss.

### IV. Count II—Breach of Implied Contract (Eaton)

■ Eaton moves to dismiss Montevideo's claim for breach of an implied contract. Montevideo contends that based on its course of dealings with Eaton, an implied confidentiality contract existed from 1994 to 2002 that prevented Eaton from disclosing proprietary information to Astromec. (Am.Compl.¶¶ 24–25.) Eaton argues that this claim must be dismissed because Minnesota law does not recognize implied confidentiality agreements and, even if recognized, the claim is barred by the statute of frauds. (Defs.' Mem. in Supp. at III.B.3.a & b.) Montevideo responds that Minnesota law recognizes implied confidentiality contracts, inasmuch as the law recognizes implied contracts in general, and that it is not barred by the statute of frauds. (Pl.'s Mem. in Opp'n at 17–18.)

Assuming Montevideo has alleged an implied confidentiality contract claim, it fails under the statute of frauds. Under Minnesota law, a contract which by its terms is not to be performed within one year comes within the statute of frauds and requires a signed writing. Minn.Stat. § 513.01(1). Montevideo's Amended Complaint indicates that the subject matter of the implied contract–maintaining the confidentiality and security of Montevideo's trade secrets–was to be performed from 1994 until 2002. Since this implied contract "by its terms is not to be performed within one year," it is barred by the statute of frauds because there is no signed writing by Eaton. Minn.Stat. § 513.01(1).

Montevideo relies upon *House v. Baxter*, 371 N.W.2d 26, 29–30 (Minn.Ct.App.1985) for the proposition that the statute of frauds does not apply to implied contracts.

(*See* Pl.'s Mem. in Opp'n at 18.) *House* does not extend this far and is distinguishable from this case. In *House*, the court found that the statute of frauds did not bar an implied extension of a written agreement. 371 N.W.2d at 29–30. In Montevideo's case, however, there was no written contract preceding the alleged implied contract. Accordingly, the Court will dismiss Montevideo's breach of implied contract claim.

### Conclusion

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED**:

1. Defendant Astromec's Rule 12(b)(2) Motion to Dismiss For Lack of Personal Jurisdiction (Doc. No. 14) is **CONTINUED UNDER ADVISEMENT**.

2. Defendant Astromec's oral Motion For Limited Jurisdictional Discovery is **GRANTED** and **IT IS ORDERED** that within sixty (60) days of this Order, the following shall occur:

   a. Montevideo shall have limited jurisdictional discovery of Astromec;[5] and

   b. Astromec and Montevideo shall file with the Court, and provide copies to each other, supplemental briefs of no longer than ten (10) pages in length addressing the jurisdictional discovery and the import of *Lakin* on this case.

3. Defendants Astromec's and Eaton's Rule 12(b)(6) Motion to Dismiss For Failure to State a Claim (Doc. No. 14) is **GRANTED IN PART** and **DENIED IN PART**, as follows: Counts II ("Breach of Implied Contract: Eaton"), III ("Tortious Inter-

ference With Contract: Astromec") and V ("Conversion") of Montevideo's Amended Complaint (Doc. No. 11) are **DISMISSED WITH PREJUDICE**.

---

5. The Court assumes that the parties will reach agreement with respect to the nature and schedule for this limited jurisdictional discovery without the necessity of judicial oversight.