The Honorable Tracy Steele State Senator Post Office Box 9267 North Little Rock, AR 72119-9267
Dear Senator Steele:
I am writing in response to your request for my opinion on the following questions:
 1. Has a non-profit organization that solicits contributions from persons in Arkansas on the Internet without registering in the State of Arkansas pursuant to A.C.A. § 4-28-402 committed a criminal offense?
2. If so, what criminal offenses may have been committed?
 3. Would key persons or corporate officers of the non-profit organization also be liable?
 RESPONSE
I assume from your reference to A.C.A. § 4-28-402 (Repl. 2001) that the "non-profit organization" in question is a "charitable organization" as defined under Arkansas Code Title 4, Chapter 28, subchapter 4.[1] I further assume, based upon your statement that the organization "solicits contributions from persons in Arkansas," that requests for contributions are made in Arkansas so as to subject the organization to jurisdiction pursuant to this body of law,[2] and that your question is whether the Internet is included as a solicitation method, thus triggering the registration requirement.
With these assumptions in mind, it is my opinion in response to your first two questions that the unregistered nonprofit organization engages in an "unfair and deceptive act or practice," punishable as a Class A misdemeanor under the Deceptive Trade Practices Act (A.C.A. § 4-88-101 etseq.), when it solicits contributions over the Internet in this scenario. In response to your third question, the issue of criminal liability would depend upon whether the key persons or officers "knowingly and willfully" violated the registration requirement.
Question 1 — Has a non-profit organization that solicits contributionsfrom persons in Arkansas on the Internet without registering in the Stateof Arkansas pursuant to A.C.A. § 4-28-402 committed a criminal offense?
The answer to this question is "yes" in my opinion, under the assumption that jurisdiction is properly invoked (see n. 2, supra). Section 4-28-402
provides in relevant part:
 (a)(1) No charitable organization, in or out of the state, shall solicit contributions from persons in this state by any means whatsoever until the charitable organization has:
(A) Registered[.]
The term "contribution" is defined as "the grant, promise, or pledge of money, credit, property, financial assistance, or other thing of value in response to a solicitation[.]" A.C.A. § 4-28-401(5) (emphasis added).
The statute defines "solicitation" to mean "each request, either directly or indirectly, for a contribution on the plea or representation that the contribution will be used for a charitable purpose." Id. at (13)(A). More to the point for purposes of your question, the term "solicitation" includes, "without limitation," the following "methods of requesting a contribution":
(i) Any oral or written request;
 (ii) Any announcement concerning an appeal or campaign to which the public is requested to make a contribution for any charitable purpose connected therewith:
(a) To the press;
(b) Over radio or television; or
(c) By telephone or telegraph;
 (iii) The distribution, circulation, posting, or publishing of any handbill, written advertisement, or other publication which directly or by implication seeks to obtain public support; or
 (iv) The sale of, offer of, or attempt to sell any advertisement, advertising space, subscription, ticket, or any service or tangible item:
 (a) In connection with which any appeal is made for any charitable purpose or where the name of any charitable organization is used or referred to in the appeal as an inducement or reason for making the sale; or
 (b) When or where, in connection with any sale, any statement is made that the whole or any part of the proceeds from the sale will be donated to any charitable purpose.
Id. at (13)(B) (emphasis added).
I believe it is clear from this broad listing, particularly the emphasized portions thereof, that making requests for contributions over the Internet constitutes "solicitation" under this statute. Accordingly, a charitable organization that engages in such solicitation must register pursuant to A.C.A. § 4-28-402, supra.
With regard to your particular question concerning a potential criminal violation as a consequence of failing to register, reference must initially be made to A.C.A. §§ 4-28-412 and -416, which address violations of A.C.A. §§ 4-28-401 et seq. The following violation, set forth under §4-28-412, appears to be the most pertinent for purposes of your question:
 It shall be a violation . . . for [a]ny person to fail to substantially comply with the requirements of this subchapter[.]
A.C.A. § 4-28-412(9) (Repl. 2001).
"Person" means:
(A) An individual;
(B) A corporation;
(C) A limited liability corporation;
(D) An association;
(E) A partnership;
(F) A foundation; or
(G) Any other entity, however styled;
A.C.A. § 4-28-401(11).
Because the nonprofit organization is a "person" under this body of law, a "violation" will occur as a consequence of its failure to register as contemplated by your question.
Punishment for a violation is governed by A.C.A. § 4-28-416, which states:
 (a)(1) A violation of the provisions of this section shall constitute an unfair and deceptive act or practice, as defined by the Deceptive Trade Practices Act, § 4-88-101 et seq.
 (2) All remedies, penalties, and authority granted to the Attorney General or other persons under the Deceptive Trade Practices Act, § 4-88-101 et seq., shall be available to the Attorney General or other persons for the enforcement of this subchapter
A.C.A. § 4-28-416 (Repl. 2001).
Violation of the Deceptive Trade Practices act is a Class A misdemeanor. A.C.A. § 4-88-103 (Repl. 2001). The unregistered nonprofit organization could therefore be charged under this statute. See also Op. Att'y Gen.1989-323 (regarding the punishment for a corporation).
Question 2 — If so, what criminal offenses may have been committed?
See response to Question 1.
Question 3 — Would key persons or corporate officers of the non-profitorganization also be liable?
This would depend upon whether the key persons or officers "knowingly and willfully" violated the registration requirement. A.C.A. § 4-88-103,supra.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] Chapter 28 of Title 4 addresses various matters pertaining to nonprofit organizations. Subchapter 4 specifically governs the solicitation of charitable contributions, and defines a "charitable organization" as follows:
(1) "Charitable organization" means any person:
(A) Who is or holds himself or herself out to be established for:
 (i) Any benevolent, educational, philanthropic, humane, scientific, patriotic, social welfare or advocacy, public health, environmental conservation, civic, or other eleemosynary purpose; or
 (ii) The benefit of law enforcement personnel, fire fighters, or other persons who protect the public safety; or
 (B) Who in any manner employs a charitable appeal as the basis of any solicitation or an appeal which has a tendency to suggest there is a charitable purpose to any solicitation[.]
A.C.A. § 4-28-401(1) (Repl. 2001).
Certain charitable organizations are exempt under A.C.A. § 4-28-404
(Repl. 2001), but I assume that the nonprofit entity in question does not fall within any of the listed exemptions.
[2] "Solicitation" occurs, for purposes of this law, "when the request is made, at the place where the request is received. . . ." A.C.A. §4-28-401(13)(B) (Repl. 2001). The exercise of personal jurisdiction must of course comport with due process. See generally Bell Paper Box, Inc.v. Trans Western Polymers, Inc., 53 F.3d 920, 921 (8th Cir. 1995); Baronev. Rich Bros. Interstate Display Fireworks Co., 25 F.3d 610, 612 (8th Cir. 1994). It bears mentioning in this regard that according to my research, courts currently use traditional jurisdictional analysis models to analyze Internet or on-line jurisdictional issues. In Lakin v.Prudential Securities, Inc., 348 F.3d 704 (8th Cir. 2003), the Eighth Circuit Court of Appeals discussed whether and how a Web site could provide minimum contacts to invoke personal jurisdiction. The court recognized that a majority of courts which have addressed the issue have adopted the analytical framework set forth in Zippo Manufacturing Co. v.Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D.Pa., 1997). The Eighth Circuit quoted Zippo and stated that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." Lakin, 348 F.3d at 710 (quoting Zippo,952 F. Supp. at 1124. The federal court in Zippo created a "sliding scale" test to measure the nature and quality of the commercial contacts for assessing the exercise of personal jurisdiction. Id. The Eighth Circuit restated a portion of the Zippo court's holding that described the "sliding scale" concept:
 At one end of the spectrum are situations where the defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.
Lakin, 348 F.3d at 710-11 (quoting Zippo, 952 F. Supp. at 1124). See alsoCybersell, Inc. v. Cybersell, Inc., 130 F.3d 414 (9th Cir. 1997).
The Eighth Circuit concluded that the "sliding scale" approach was appropriate in cases of specific jurisdiction.